**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:21-CR-131** |
| | ) | **Hon. Claude M. Hilton** |
| **MICHAEL THOMAS PRUDEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION TO SUPPRESS EVIDENCE FROM
INDIAN HEAD HIGHWAY APARTMENT SEARCH**

Defendant Michael Pruden moves this court to suppress all evidence seized from his apartment based on a search warrant that was remarkable in its breadth and lacking in probable cause for the wholesale search and seizure of items that it seemingly authorized.[1]

Mr. Pruden is alleged to have committed assault with a dangerous weapon (to wit: a stick and pepper spray) on March 21, 2021, on Daingerfield Island, federal parkland located along the George Washington Parkway in Alexandria, Virginia. On May 27, 2021, more than two months after the alleged assault, U.S. Park Police obtained a warrant for the search and seizure of all digital devices, as well as instrumentalities of the alleged assault, from Mr. Pruden's Indian Head Highway apartment in Prince George's County, Maryland. Mr. Pruden has been charged with a single count of assault with a dangerous weapon, and no evidence has been cited indicating that any cell phone or electronic device was used during the alleged offense. Nor was any evidence

---

[1] In addition to the search of his apartment, law enforcement separately obtained a warrant to search Mr. Pruden's vehicle and cell phone, which law enforcement seized at the time of his arrest on May 7, 2021. The government is in the process of producing this additional warrant to defense counsel, but has not yet done so. As such, counsel for Mr. Pruden is not able to file a motion to suppress evidence from those searches at this time. Defense counsel anticipates filing a second motion to suppress the contents of his vehicle and cell phone on similar grounds of overbreadth and lack of probable cause once the government produces this additional warrant, and will do so promptly once the warrant is received.

cited to indicate that instrumentalities of the alleged assault would be found at Mr. Pruden's residence. Accordingly, any contents from any electronic device, or items in the apartment, and all fruits derived therefrom must be suppressed.

## **BACKGROUND**

Mr. Pruden is charged with a single count of Assault with a Deadly Weapon on March 21, 2021. Mr. Pruden was arrested for this alleged offense on May 7, 2021, at which time U.S. Park Police seized, without a warrant, Mr. Pruden's vehicle and cellphone. The police later obtained a search warrant for this seized property on May 21, 2021,[2] and subsequently obtained a second search warrant for Mr. Pruden's apartment on May 27, 2021, the latter of which is the subject of this Motion.

The affidavit in support of the May 27 search warrant for Mr. Pruden's home is based on the U.S. Park Police's investigation of the alleged March 21 assault on Daingerfield Island.[3] According to the search warrant affidavit, on March 21, 2021, at approximately 4:00 p.m., two men came upon a man, later identified by police as Mr. Pruden, while walking on a trail within Daingerfield Island; one of the men, R.S., reported that the man matching Mr. Pruden's appearance approached them, identified himself as a police officer, and sprayed them both with pepper spray. R.S. further reported that he confronted this assailant, at which time the assailant sprayed him again with pepper spray and hit him over the head with a stick. R.S. reported that he and his companion ran out of the woods. After arriving on scene at Daingerfield Island, U.S. Park Police interviewed two witnesses, one of whom said he saw a man run after another man on the trail and

---

[2] As explained above, supra note 1, defense counsel has not yet received a copy of this May 21 warrant for Mr. Pruden's vehicle and cell phone.

[3] The information described herein is taken from the search warrant affidavit and is presented as background for purposes of this Motion only. Additional or different information may be adduced at future proceedings in this case.

hit the man in the head with a stick, after which the assailant removed his shirt and hat.  The second witness told police officers that he saw a shirtless man exit the woods and get into a vehicle, which police subsequently determined to be registered to Mr. Pruden, and leave the park.  R.S. later identified Mr. Pruden as his assailant when presented with a photo array.

The affidavit in support of the May 27 search warrant also refers to U.S. Park Police investigation into assaults at Meridian Hill Park in Washington D.C. over the last several years which police deemed similar in nature to the reported assault on Daingerfield Island.  According to the affidavit, at least two of the victims of the Meridian Hill assaults identified their assailant as a white male; five other individuals described the assailant as an African-American male.  Only the individuals who identified their assailant as African-American were presented with a photo array which included a photo of Mr. Pruden (the same photo array shown to R.S. from the Daingerfield Island incident), and selected Mr. Pruden's photo from the array provided to them.

Approximately six weeks after the incident on Daingerfield Island, U.S. Park  Police obtained an arrest warrant for Mr. Pruden based on the Daingerfield Island incident, which they executed at his place of employment. Mr. Pruden remained in police custody until being released on bond on May 21, 2021, and police retained his cellphone and vehicle.  After executing a search warrant on the vehicle, investigators did not locate any instrumentalities of the Dangerfield Island assault in Mr. Pruden's vehicle.  As far as the defense is aware, investigators also did not uncover any evidence to support that Mr. Pruden intentionally visited parks like Daingerfield Island or Meridian Hill Park to confront or assault men.

Approximately one week later, police sought a second search warrant, this one for Mr. Pruden's apartment which authorized the seizure of, among other items:

a. Records, information, and other evidence related to parks in the Metropolitan Washington, D.C., area, including but not limited to Daingerfield Island in Alexandria, Virginia, and Meridian Hill Park in Washington, D.C.;

b. Records and information related to, and other evidence referencing, LGBTI+ individuals, groups, issues, gathering spots, or communities in the Metropolitan Washington, D.C., area, including but not limited to the Eastern District of Virginia and Washington, D.C.;

c. Instrumentalities of the offense, including:
   i. Pepper spray canisters or similar irritant chemical sprays;
   ii. Flashlights;
   iii. Items of equipment associated with law enforcement, including radios, uniforms, replica badges, handcuffs, or weapons;

d. Records, information, and other evidence that constitute evidence of use, control, ownership, or occupancy of the PREMISES;

e. Records, information, and other evidence indicating PRUDEN rents a storage unit;

f. Digital devices that may be found inside the PREMISES;

*See* Affidavit in Support of An Application Under Rule 41 For a Warrant To Search and Seize, 8:21-mj-01595-TJS, ECF Doc. 3 (D. Md. June 10, 2021), at 25 (Attach. B).

Nowhere in the accompanying affidavit is there any direct support that the evidence that U.S. Park Police sought would be found at Mr. Pruden's residence. Instead, the affiant, U.S. Park Police Investigator Wallingford, states that based on his experience:

> I know that evidence, fruits, instrumentalities, or contraband related to criminal violations can often be found within a suspect's residence. As discussed above, when searching PRUDEN's Vehicle we did not find certain instrumentalities of the Offenses. Specifically, pepper spray canisters or similar irritant chemical sprays or items of equipment associated with law enforcement, including radios, uniforms, replica badges, handcuffs, or weapons were not found in the Vehicle. Additionally, the following were not found in PRUDEN's Vehicle: (a) records, information, and other evidence related to parks in the Metropolitan Washington, D.C., area, including but not limited to Daingerfield Island in Alexandria, Virginia and Meridian Hill Park in Washington, D.C., (b) records and information related to, and other evidence referencing, LGBTI+ individuals, groups, issues, gathering spots, or communities

4

> in the Metropolitan Washington, D.C., area, including but
> not limited to the Eastern District of Virginia and
> Washington, D.C.; and (c) records, information, or other
> evidence indicating PRUDEN rents a storage unit. There is
> probable cause to believe that the aforementioned items and
> instrumentalities will be found within the PREMISES,
> where PURDEN was residing prior to his arrest.

*Id*. at ¶ 27. The absence of evidence in one searched area does not, by itself, provide probable

cause for finding the evidence of in another location.

The affiant used a similarly vague rationale to support the search and seizure of any and all

electronic devices in Mr. Pruden's home:

> While a Cell Phone was seized from PRUDEN when he was
> arrested, investigators have reason to believe that additional
> Devices and other evidence of criminal activity are currently
> located at [XXXX] Indian Head Highway, Apartment #204,
> Oxon Hill, Maryland, 20745, because additional Devices
> were not found in PRUDEN's Vehicle.

> *Id*. at ¶35.

The affidavit lacks any evidence indicating the police have any particularized knowledge

that any cell phones, computers or networking devices are in the searched apartment nor that Mr.

Pruden ever used any of these devices, nor any cell phone, to facilitate any criminal activity.

Rather, after nine pages recounting the history of the investigation without any reference to anyone

ever using a computer, cell phone or social networking program, or that anyone other than the

assailant knew or was involved in the crime, the affiant provides three pages of conclusory

statements based solely on the affiant's experience, including:

> I know that people who commit crimes, including the crimes
> under investigation, often use their Devices in ways that
> reveal their location and/or activities before, after, or while
> engaging in criminal activity, as well as their criminal intent.
> . . . [and] call logs, text messages, emails, and any application
> enabling communication with others often include
> communications that shed light on the Devices user's
> location and activity during a particular time period. . . . I
> also know that Devices often contains images, video

5

recordings, and audio recordings of the Devices user and his close associates. These may reveal or confirm distinguishing characteristics – such as voice, tattoos, clothing, vehicle, and hangouts –that may help identify them. . . . I know that perpetrators of crime often communicate with others before, during, and after the crime. They communicate using text messaging, apps, social media, photographs, audio and/or video recordings, etc. In my training and experience, such communications have revealed the identities and relationships between and among the involved individuals, as well as their motive, hostility, knowledge, and intent relating to the crime. Moreover, such communications have also revealed consciousness of guilt and efforts to impede police investigation. . . . I know that individuals involved in criminal activity often use their Devices to search the internet or social media sites to learn the status of a criminal investigation, i.e. look up the newspaper articles about the crime, determine if the police have suspects, and learn the identity of witnesses. . . . I know that witnesses, and even perpetrators, often record criminal activity. . . . I know that individuals involved in illegal activity operate a significant amount of their criminal activity with the assistance of their digital devices and they maintain a large volume of data on their digital devices. . . . I also know that individuals who commit the crimes under investigation often use electronic devices that connect to the Internet, such as laptop computers and tablets, to conduct research about potential victims, to conduct research into locations at which to find victims, to purchase supplies used in the attack, and to conduct other research to plan and facilitate the attack.

*Id*. at ¶¶ 29-35.

Overall, the May 27, 2021, search warrant was not based on any articulable facts to indicate law enforcement would find evidence of the Daingerfield assault at Mr. Pruden's home other than the fact that they did not find evidence in his vehicle. The affidavit's reliance on bald, speculative assertions that people who commit crimes often use digital devices to assist in the commission of crime only underscores the lack of evidence justifying a blanket seizure and search of any electronic device found in the home. This does not constitute probable cause and thus the fruits of the search must be excluded from evidence.

## ARGUMENT

The Fourth Amendment specifically provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To test whether probable cause supported a search warrant, a reviewing court must determine if the magistrate had a "substantial basis for concluding that a search would uncover evidence of wrongdoing" in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). That substantial basis cannot come from mere "conclusory statement(s)." *See id*. at 239. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*.

Moreover, the law distinguishes between warrants to arrest and search warrants. Rather than protect an individual's person, a search warrant "safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Steagald v. United States*, 451 U.S. 204, 212-13 (1981). Given these distinctions, "probable cause to arrest a person will not itself justify a warrant to search his property." *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017). A search warrant must be grounded in "probable cause to believe that the legitimate object of a search is located in a particular place." *Steagald*, 451 U.S. at 213. Moreover, "[t]here must, of course, be a nexus ... between the item to be seized and criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

A valid search warrant indicates with particularity both "the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV; *United States v. Robinson,* 275 F.3d 371, 381 (4th Cir. 2001) (the particularity requirement of a search warrant protects a person against "a general, exploratory rummaging in a person's belongings.").  Particularity "ensures that the search

will be carefully tailored to its justifications and will not take on the character of the wide-ranging searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). This requirement is "closely tied to the requirement of probable cause" insofar as a warrant that "describes the objects of the search in unduly 'general terms,' . . . "raises the possibility that there does not exist a showing of probable cause to justify a search for them." *Griffith*, 867 F.3d at 1275-76 (*quoting* 2 LaFave, *Search & Seizure* § 4.6(a) and (d) (5th ed. 2012)).

Additionally, an "otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting W. LaFave, *supra* at § 4.6(a) and finding overbroad a warrant permitting a search of all computers in home of sex offender suspected of communicating with minors on the internet). In other words, the scope of the warrant must "be limited by the probable cause on which the warrant was based." *United States v. Manafort*, 323 F. Supp. 3d 795, 801 (E.D. Va. 2018) (Ellis, J.) (quoting *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)).

Importantly, the Fourth Amendment holds a person's home "at [its] very core" because of the unique expectation individuals have there to "be free from unreasonable governmental intrusion." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted). When an officer seeks a search warrant for one's home, courts must seriously consider the intrusion into this most private of spaces. This is particularly salient when considering search warrants for small items like cellphones which can be hidden almost anywhere in one's home and, thus, would allow for a virtually unrestricted exploration of a person's home. *Id.* Such searches should only be authorized upon a strong showing of probable cause that the sought after items are likely to be located within the premises.

Moreover, the search of electronic devices, particularly cell phones, is of particular concern under Fourth Amendment principles given the vast amount of data contained on such devices as well as the heightened privacy interests at stake. Blanket seizure and searches of electronic devices raise heightened constitutional and privacy concerns given the breadth and wealth of information that such devices contain.  As the Supreme Court observed in *Riley v. California*, "Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a…wallet or purse." *Riley*, 573 U.S. at 2488-89. The "'immense storage capacity' of cell phones, as well as the breadth and sensitivity of information that can be stored on such devices, justify more significant Fourth Amendment scrutiny" where such devices are concerned. *United States v. Burton*, 756 Fed. Appx. 295, 302 (4th Cir. 2018) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

If evidence is seized from a search of one's cellphone, tablet, computer, or within one's home, pursuant to a warrant lacking probable cause, the evidence must be suppressed if exclusion of the evidence "will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897, 918 (1984). When an affidavit is lacking in probable cause, evidence seized pursuant to the warrant may be admitted only where the "affidavit was made in good faith, the warrant issued by a detached and neutral magistrate and the warrant was reasonably relied on in good faith by the police officers." *Id.*

I.      **The Search Warrant Was Overbroad and Lacked Probable Cause for The Wholesale Search and Seizure of Items From Mr. Pruden's Residence**

The instant case involves a search of both Mr. Pruden's home and any and all electronic devices located within and, accordingly, requires heightened scrutiny into whether sufficient probable cause supported the warrant.  Such scrutiny clearly indicates the affidavit was overbroad and lacking in probable cause to believe that any evidence would be present.  As an initial matter,

9

with respect to digital devices, there is no allegation that the police had any evidence that Mr. Pruden had or used any electronic device, or that he ever used any such device in connection with any criminal endeavor nor that said devices were present in the premises to be searched.  If the warrant in this case were allowed to stand, it would mean that anytime the police have reason to identify anyone as a potential suspect, they automatically have probable cause to intrusively search through that person's home, phone, and all other electronic devices, even when the affidavit does not identify a single instance when the suspect has ever used any of those devices for a criminal purpose.  That is simply untenable under the Fourth Amendment.  Furthermore, the warrant's authorization to search for and seize generic items of pepper spray and flashlights, as well as law enforcement "equipment" --  defined to include any "weapon" – is so overbroad and lacking in specificity to the alleged incidents under investigation as to amount to a fishing expedition.[4]

## II.      The Good Faith Exception Does Not Apply

In some circumstances, a court may allow the government to use evidence seized pursuant to a deficient warrant if it finds that the law enforcement officers executing the warrant could objectively rely in good faith on the magistrate's probable cause determination.  *United States v. Leon*, 468 U.S. 897, 920 (1984).  However, this "*Leon* good faith exception" does not apply if the warrant was facially deficient, such that it failed to identify the items to be seized or place to be searched, or if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id*. at 923.

On this record, the *Leon* good faith exception does not apply.  There is nothing in the affiant's statements which evidences a connection between the assault and Mr. Pruden's home or

---

[4] Among other items seized during the search of Mr. Pruden's residence were a folding knife, BB guns, and stun gun.  There is no connection whatsoever between these items and the incidents under investigation by U.S. Park Police, and there is no legal basis, probable cause or otherwise, to justify their seizure.

any electronic device beyond mere speculation. In short, the warrant hinges on an affidavit supported almost exclusively on conclusory statements and is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Edelen*, 529 A.2d 744, 786 (D.C. 1987). There is simply no reasonable basis to believe that probable cause existed in this case for the authorized blanket seizure of items listed therein. Because an objectively reasonable officer would have known his affidavit lacked the requisite connection between the sought-after items and its purported description of probable cause, the warrant at issue here falls well beyond the reach of the good-faith exception. *See United States v. Doyle*, 650 F.3d 460, 470 (4th Cir. 2011) (suppressing evidence obtained by search warrant where "deficiencies in the affidavit [supporting the search warrant] … were so great as to render it objectively unreasonable" for police to rely upon the warrant). *See also United States v. Griffith*, 867 F.3d 1265, 1278-79 (D.C. Cir. 2017) (*Leon* good faith exception does not apply where the affidavit in support of search warrant to seize all electronic devices in residence both failed to establish probable cause for such seizure and was overbroad).

WHEREFORE, for the foregoing reasons, as well any other reasons that may arise at a hearing on this motion, defendant respectfully requests that the motion be granted.

## CONCLUSION

Based on the foregoing reasons, and such others that may appear following a hearing on this Motion, Mr. Pruden respectfully requests that the Court suppress evidence obtained from a search of Mr. Pruden's home, and any evidence derived therefrom.

Respectfully submitted,

MICHAEL THOMAS PRUDEN

By Counsel

_____/s/_____

Shannon S. Quill, Esq.
Va. Bar No. 76355
Assistant Federal Public Defender
Counsel for Mr. Pruden
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
(703) 600-0880 (fax)
Shannon_Quill@fd.org

## CERTIFICATE OF SERVICE

I certify that on July 11, 2021, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which sends a notification of such filing to all counsel of record.

Christopher Cooke
Special Assistant United States Attorney
2100 Jamieson Ave
Alexandria, VA 22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the

foregoing pleading will be delivered to chambers within one business day of the electronic filing.

_____/s/_____

Shannon S. Quill
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
(703) 600-0880 (fax)
Shannon_Quill@fd.org