IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-131 |
| | ) | |
| MICHAEL THOMAS PRUDEN, | ) | The Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF PRIOR ASSAULTS**

The United States no longer intends to elicit any 404(b) testimony from U.S. Park Police Investigator David Wallingford in its case-in-chief. The United States instead seeks only to introduce brief testimony from witness D.S. regarding D.S.'s personal observations of the defendant attacking D.S. and other victims in Meridian Hill Park using the same *modus operandi* the defendant used in the charged assault. This renders moot the issue of 404(b) testimony from Investigator Wallingford but leaves live the admissibility of D.S.'s testimony. For several reasons, that testimony lies at the heart of what Federal Rule of Evidence 404(b)(2) allows.

First, D.S.'s testimony is probative of the defendant's identity as the assailant at Daingerfield Island. Second, it is probative of the defendant's intent to do bodily harm, his plan and preparation for the attack, and the absence of any mistake or accident, including self-defense. Identity and intent are essential elements of the government's case, and a single Rule 404(b) witness will assist the jury in evaluating those elements by revealing the defendant's common *modus operandi* across the assaults D.S. personally witnessed. For those reasons, with respect to D.S.'s testimony, the defendant's motion should be denied.

While the United States acknowledges the defendant may have raised valid concerns about Investiator Wallingford's proposed 404(b) testimony, those concerns are not implicated by D.S.'s proposed testimony and there is therefore no basis for depriving the jury of that critical evidence. The United States respectfully requests the opporuninty to resolve this issue before the commencement of trial so the United States knows whether it is appropriate to reference D.S. in its opening. To the extent the defendant has outstanding objections based on hearsay, the United States respectfully submits that the appropriate time to resolve those objections is during trial, when the Court has the opportunity to assess what foundation has been laid, what specific testimony has been offered, who has offered it, and in what context.

## BACKGROUND

On Sunday, March 21, 2021, R.S. and T.B.[1] were walking along Daingerfield Island's trail system when they encountered another adult male, later identified as the defendant. The defendant falsely stated he was a police officer, imitated speaking into a police radio, and then sprayed R.S. and T.B. with pepper spray. *See* ECF No. 2, at 2–3. When R.S. attempted to defend himself, the defendant sprayed him again, this time directly in the eyes. As R.S. turned to flee, the defendant beat R.S. over the head and back with a tree branch until it broke. *Id.* at 3. R.S. was later transported to the hospital.

When officers arrived on scene, they interviewed T.B. and R.S., as well as eyewitnesses S.M and C.T. The first witness, S.M., heard R.S. yelling as he escaped the attack and observed an individual matching the defendant's description chasing and spraying R.S. and T.B. S.M. also observed the defendant hit R.S. over the head and back with a tree branch. S.M. then saw the defendant remove his shirt as he fled into the woods. The second witness, C.T., observed a shirtless

---

[1] Victims and witnesses involved in this incident are being referred to by their initials to protect their identities.

suspect matching the defendant's description emerge from the woods running full speed. That suspect entered a silver Honda Accord. C.T. recorded the license plate number and provided it to law enforcement.

Investigators ran that license plate number and learned it was registered to the defendant and associated with a 2020 silver Honda Accord. Investigators then confirmed the defendant matched the physical descriptions of the suspect provided by victims R.S. and T.B. and witnesses S.M. and C.T. Investigators next obtained the defendant's driver's license photograph and included it in a photo array that was presented to R.S. through a double-blind procedure. R.S. identified the defendant as his attacker. Later, when Park Police ultimately learned of the defendant's apartment and obtained a warrant to search it, they found and seized a large cannister of bear spray.

At trial, R.S., S.M., C.T., and Investigator Wallingford will testify to these facts. Defense counsel will have an opportunity to cross examine each witness with regard to what that witness observed and stated during direct examination. It is foreseeable that defense will attempt to challenge the testimony in various ways, including by suggesting the defendant did not commit the assault or had some legitimate basis for his actions. The single Rule 404(b) witness the United States will utilize will address these essential issues, and the jury should be permitted to receive this relevant testimony, even if briefly.

The attack in Daingerfield Island is strikingly similar to the attacks D.S. observed, just seven miles down the road, in Meridian Hill Park. Meridian Hill Park, like Daingerfield Island, is well known in some circles as a "cruising ground," where men engage in consensual sexual encounters with other men. *See* ECF No. 42, Attach. 1, at 5, 7. In many of the attacks D.S. observed, the assailant emerged from the trees, bushes, or shadows to confront adult men walking together in the park. In several of the attacks observed by D.S., like the attack in Daingerfield

Island, the assailant falsely claimed or presented himself to be a police officer. And in all the attacks D.S. observed, as in Daingerfield Island, the assailant pepper sprayed his victims but did not then rob or otherwise seek something from them. Together, these similarities appear to be the defendant's signature. As he will testify, D.S. can identify the defendant as the individual he has seen many times in the park carrying out his signature attack.

The United States is not interested in drawing this trial out. Rather than calling all the Meridian Hill Park victims who have so far identified the defendant as their attacker, the United States seeks to call only *one*. And the United States expects D.S.'s testimony to be swift—simply enough to explain that he has personally seen the defendant carry out numerous attacks just like the one carried out at Daingerfield Island and to lay the foundation for a reliable identification.

## ARGUMENT

Testimony from D.S. regarding the defendant's prior assaults in Meridian Hill Park is precisely the sort of evidence Rule 404(b) exists to admit and easily satisfies the four-prong standard articulated in *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Evidence is admissible under Rule 404(b) when it is (1) relevant, (2) necessary, (3) reliable, and (4) not substantially outweighed by any unfair prejudice to the defendant. *Id.* Because D.S.'s testimony is relevant, necessary, reliable, and not unfairly prejudicial, it is admissible pursuant to Rule 404(b)(2).

### I.   The Evidence Is Relevant.

As a threshold matter, the defendant first argues that the attacks in Meridian Hill Park, including those D.S. would testify to witnessing, are not relevant or probative. *See* Def. Mot. Limine, ECF No. 46, at 5. But under *Queen*, the probative value of proposed evidence goes to necessity (the second prong), not relevance (the first prong). *See Queen*, 132 F.3d at 997 ("(2) The

act must be necessary in the sense that it is probative of an essential claim or an element of the offense."). For Rule 404(b), the question is whether the proposed evidence would "be relevant to an issue, such as an element of an offense." *Id.* Here, it would be.

Evidence is relevant when it makes the existence of a material fact "more probable or less probable," FED. R. EVID. 401, and has more than a "tenuous relation to the charged offense," *United States v. Lentz*, 282 F. Supp. 2d 399, 432 (E.D. Va. 2002), *aff'd*, 58 F. App'x 961 (4th Cir. 2003). And under *Queen*, "the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." 132 F.3d at 997.

Here, the similarities are striking.[2] All the assaults involve the perpetrator confronting victims in areas of parks specifically known as "cruising" spots, where gay men engage in consensual sex. In each assault reported by D.S., and in the assault at Daingerfield Island, the assailant was described as a tall, slightly overweight, adult, black male. In the assaults observed by D.S., the attacker identified himself as a law enforcement officer and/or ordered his victims out of the park. Here, the defendant stated he was a cop. And above all, in every assault observed by D.S. and at Daingerfield Island, the assailant sprayed victims with a chemical irritant from a large cannister. Moreover, just like the Daingerfield Island assault, none of the Meridian Hill Park attacks witnessed by D.S. involved the attacker robbing his victims.

---

[2] The defendant suggests a recent attack in Meridian Hill Park "completely upends the government's entire premise for offering the 'other acts' evidence." Def. Mot. Limine, ECF No. 46, at 5. To the contrary, this attack only highlights the unique similarities between the attacks D.S. observed the defendant perpetrate and the attack at Daingerfield Island. Unlike the Daingerfield Island attack and the attacks observed by D.S., the recent attack involved an anti-gay slur, consisted of the attacker seriously maiming the victim by striking him across the face with a blunt object, involved no police imitation or orders to leave the park, and—most significantly—did not involve the defendant's signature: pepper spray. It therefore also demonstrates that the United States takes its 404(b) proposal seriously and is not attempting to simply tar the defendant's character or reputation by baselessly accusing him of any and every attack at Meridian Hill Park. In fact, the United States' submits that this attack is entirely irrelevant under Rule 401.

5

Are there differences between the attacks D.S. observed in Meridian Hill Park and the attack at Daingerfield Island? Of Course. But not many. And at any rate, the Fourth Circuit "does not demand that the prior bad act be 'identical' to the conduct charged, but only requires that it be 'similar enough.'" *United States v. Elebesunu*, 677 F. App'x 862, 867 (4th Cir. 2017) (quoting *United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998)). There is no real question that the attacks observed by D.S. and the one at Daingerfield Island are "similar enough."

In light of these similarities, D.S.'s testimony is relevant to identity, intent, and *modus operandi*. First, if credited by the jury, D.S.'s identification of the defendant will tend to corroborate R.S.'s identification of the defendant as the Daingerfield Island assailant. In other words, D.S.'s testimony is not offered to lead the jury to believe the defendant is a bad person who probably did this attack. Instead, D.S.'s ability to identify the defendant as the perpetrator of several nearby assaults will aid the jury in assessing the reliability of R.S.'s identification of the defendant as the perpetrator of a strikingly similar assault. Second, D.S.'s testimony, if credited by the jury, would tend to make the defendant's intent to cause bodily harm at Daingerfield Island more probable. That is to say, if the jury credits D.S.'s testimony that D.S. has seen the defendant carry out uniquely similar pepper-spray attacks on multiple occasions in the past, that would make it more likely the defendant intended to cause R.S. bodily harm and less likely the defendant pepper sprayed R.S. by accident, mistake, or in self-defense.

Finally, D.S.'s testimony reveals the defendant's *modus operandi*, which is relevant under Rule 404(b). *See United States v. Tanner*, 61 F.3d 231, 237 (4th Cir. 1995). In *Tanner*, the court found that the defendant's prior acts were admissible because their similarity to the acts charged showed the defendant was acting consistent with a remarkably specific pattern of behavior. *Id.* As noted, D.S.'s testimony will reveal several hallmarks of the defendant's assaults that were also

present at Daingerfield Island. Thus, D.S.'s testimony is relevant as evidence of the defendant's *modus operandi*.

Because D.S.'s testimony is relevant on three separate grounds, it is admissible under Rule 401 and easily satisfies the relevance prong of *Queen*'s 404(b) test.

## II. The Evidence Is Necessary.

D.S.'s testimony is necessary under *Queen* because it is "probative of an essential claim or an element" in a manner not offered by "other evidence available to the government." *Queen*, 132 F.3d at 997–98. It is also necessary because it "help[s] provide context for the crime" charged. *Tanner*, 61 F.3d at 237; *see also United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) ("Evidence is necessary, even if it does not relate to an element of a charged offense, when it furnishes part of the context of the crime.") (internal quotation marks omitted).

Assessed under the applicable standard, D.S.'s testimony is necessary to the United States' case. As the Fourth Circuit stressed in *Queen*, "the government, which has the burden of proving every element of the crime charged, must have the freedom to decide how to discharge that burden." 132 F.3d at 997. Here, the United States bears the burden of proving that (1) the defendant is the person who committed the assault at Daingerield Island and (2) that he did so with the intent to do bodily harm—essential claims or elements.

While the United States certainly agrees its witnesses and evidence against the defendant are strong because the "assault on Daingerfield Island occurred during the day, in a public setting, and was witnessed by more than one person," Def. Mot. Limine, ECF No. 46, at 8, D.S.'s testimony provides key information the Daingerfield Island witnesses do not: evidence that the defendant has done the same thing in the past and therefore knew what he was doing, knew his actions would cause bodily harm, and was not acting in self-defense. Moreover, D.S. provides a highly reliable

identification since he has seen the attacker multiple times from the perspective of both a victim and a witness. All this otherwise-unavailable information is "probative of an essential claim or an element" in a manner not offered by "other evidence available to the government." *Queen*, 132 F.3d at 997–98.

In sum, D.S.'s testimony is not cumulative, it is different in kind. *See United States v. Lighty*, 616 F.3d 321, 354 (4th Cir. 2010). D.S.'s testimony will fill evidentiary gaps to buttress issues and elements the defendant is likely to exploit at trial. Courts routinely regard Rule 404(b) evidence as necessary for such purposes. *See United States v. Byers*, 649 F.3d 197, 209-10 (4th Cir. 2011) ("Coleman's testimony was necessary to make more certain the identification made by Lackl and rebut Byers's attack on Lackl as a reliable witness."); *United States v. Torrez*, 869 F.3d 291, 301 (4th Cir. 2017) (finding that evidence of the defendant's prior rapes were relevant and necessary to show "intent and motive, as well as *modus operandi*.").

D.S.'s testimony is therefore "necessary" under *Queen*.

### III.  The Evidence Is Reliable.

As to reliability, the applicable standard is "remarkably broad." *United States v. Zeleke*, 811 F. Supp. 2d 1232, 1239 (E.D. Va. 2011). "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (internal quotation marks and citation omitted). Moreover, evidence is not deemed to be unreliable simply because the jury may not find such evidence credible. *See United States v. Comstock*, 412 F. App'x 619, 624 (4th Cir. 2011). Here, D.S. will testify only to what he has personally observed, and he is expected to testify that he has personally seen the defendant many times in Meridian Hill Park. D.S. is further expected to testify that, given the frequency with which he has seen the defendant—including up close—he is

readily able to identify the defendant and knows the defendant is the individual he has seen assault victims in Meridian Hill Park on many occasions in ways that involve the same signature present in the attack at Daingerfield Island.

Under the governing reliability standard, nothing about D.S.'s short testimony will necessitate a trial within a trial, as the defendant warns. D.S. will testify, the defendant will cross-examine him, and the jury will assess his credibility. To the extent the defendant believes he has identified details of previous statements or observations by D.S. that call into question the credibility of D.S.'s testimony, the defendant may raise those issues on cross-examination. *United States v. Cowden*, 882 F.3d 464, 472–73 (4th Cir. 2018) ("[A]lthough there were slight variations between the accounts of witnesses present at both incidents, the witnesses' testimony was not rendered unreliable by those differences, which were proper subjects of cross-examination and argument regarding the witnesses' credibility."). The jury may then believe D.S. or not, and that is all the reliability standard contemplates under *Queen*.

D.S.'s testimony may be ripe for cross-examination, but it is simply untenable to say it will be "so preposterous that it could not be believed by a rational and properly instructed juror." *Siegel*, 536 F.3d at 319. D.S.'s proposed testimony is therefore reliable for Rule 404(b) purposes.

**IV.     The Probative Value of the Evidence Is Not Substantially Outweighed By Confusion or Unfair Prejudice.**

The final *Queen* factor requires that "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Queen*, 132 F.3d at 997. Unfair prejudice arises when there is "a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Udeozor*, 515 F.3d 260, 264 (4th Cir. 2008) (internal quotation marks omitted). The Fourth

9

Circuit has held that "bad acts evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence did not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (internal quotation marks omitted).

Only one of the United States' five witnesses will testify to the attacks in Meridian Hill Park, and there is little risk that the testimony of one witness will confuse the jury. Plus, because the assaults bearing the defendant's signature are so similar, it cannot be said that D.S.'s testimony would "involve conduct any more sensational or disturbing than the crimes with which the defendant was charged." *Id.* Nor is there any reason to believe that the testimony of one witness alleging the defendant has done this before would provoke a properly instructed jury "to irrational behavior." Importantly, the proposed evidence does not paint the defendant in broad brushstrokes as having a general tendency toward criminal behavior. Rather, it has significant, probative value bearing on essential elements, such as the defendant's identity, intent, and *modus operandi*.

Finally, any prejudice that the defendant purports might arise as a result of D.S.'s testimony can be properly addressed with a limiting instruction to the jury, which the United States supports. *See United States v. Goodall*, No. 17-4383, 2018 WL 3455807, at *1 (4th Cir. July 17, 2018) ("The prejudicial effect of prior acts evidence is mitigated by limiting instructions given by the district court."); *Queen*, 132 F.3d at 997 ("In cases where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides.").

Accordingly, the significant probative value of D.S.'s limited testimony is not outweighed—let alone substantially outweighed—by any confusion or unfair prejudice.

## CONCLUSION

"It is well-settled that Rule 404(b) is 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'" *Zeleke*, 811 F. Supp. at 1237 (quoting *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001)). Here, the United States seeks to admit limited evidence of past assaults to prove essential elements of the crime, including identity and intent.

For the reasons stated above, with respect to D.S.'s testimony, the defendant's motion *in limine* should be denied. The defendant's remaining objections are either moot or best resolved at trial.

Respectfully Submitted,

Raj Parekh
Acting United States Attorney

By: _____/s/_____
Christopher R. Cooke
Special Assistant United States Attorney
Jacob M. Green
Special Assistant United States Attorney
Tony R. Roberts
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office: (703) 299-3700
Fax: (703) 299-3980
Email: Christopher.Cooke@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that, on August 10, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                /s/
                Christopher R. Cooke
                Special Assistant United States Attorney
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, VA 22314
                Office: (703) 299-3700
                Fax: (703) 299-3980
                Email: Christopher.Cooke@usdoj.gov